UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN GONZALEZ MERCEDES, *individually and on behalf of others similarly situated,*

Plaintiff,

-against-

TITO TRANSMISSION CORP. (d/b/a V.A. AUTOMATIC TRANSMISSION REPAIRS), and VICENTE AMPARO,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/04/2018

15cv1170 (CM) (DF)

**REPORT AND RECOMMENDATION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
FILED: 1/4/19

**TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

On February 18, 2015, plaintiff Juan Gonzalez Mercedes ("Plaintiff"), purportedly on

behalf of himself and others similarly situated, commenced this putative collective action

pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New

York Labor Law (the "NYLL"), Sections 190 *et. seq.* and Sections 650 *et seq.*, to recover unpaid

overtime wages, spread of hours pay, liquidated damages, prejudgment interest, and attorneys'

fees and costs. (*See* Complaint, dated Feb. 18, 2015 ("Compl.") (Dkt. 1).) Plaintiff's Complaint

named two defendants, Tito Transmission Corp. (d/b/a V.A. Automatic Transmission Repairs)

("Tito Transmission") and Vicente Amparo ("Amparo") (collectively, "Defendants"). (*See*

Compl.) After Defendants failed to move, answer, or otherwise respond to the Complaint, the

Honorable Colleen McMahon, U.S.D.J., entered a default judgment against them in Plaintiff's

favor (Dkt. 41), and referred this matter to this Court to conduct an inquest concerning Plaintiff's

damages. (Dkt. 42.)

For the reasons that follow, I recommend that Defendants be held jointly and severally

liable to Plaintiff for (1) damages in the amount of $245,267.47, representing (a) $124,968.75 in

unpaid overtime wages, (b) $101,547.92 in liquidated damages under state law, and (c) $5,000 in

1/3/2019 *The time for filing objections has passed. No objections have been filed and no request was made for an extension. Therefore, defendant is in default. The court has reviewed the report and sees no reason not to adopt it as my opinion. Therefore, the Clerk is directed to enter judgment as set forth on Dkt 33. CMC* [signature]

statutory damages under state law; (2) prejudgment interest in the amount of $65,916.67, plus additional prejudgment interest to be calculated by the Clerk of Court from May 25, 2017 (the date of Plaintiff's inquest filing) to the date of entry of final judgment; and (3) attorneys' fees and costs in the amounts of $7,280 and $400, respectively.

## BACKGROUND

### A. Factual Background

Given Defendants' default, the well-pleaded allegations contained in the Complaint, as summarized below, are deemed to be true, except for those allegations relating to damages. (*See* Discussion *infra*, at Section I(A); *see also, e.g.*, *Guaman v J&C Top Fashion, Inc* , No. 14cv8143 (GBD) (GWG), 2017 WL 111737, at *1 (S.D.N.Y. Jan. 11, 2017).) The facts included herein are also taken from Plaintiff's Proposed Findings of Fact and Conclusions of Law (*see* Proposed Findings of Fact and Conclusions of Law, dated May 25, 2017 ("Proposed Findings") (Dkt. 46)), which rely not only on the Complaint, but also on a declaration submitted by Plaintiff (*see* Declaration of Juan Gonzalez Mercedes in Support of Proposed Findings of Fact, dated May 25, 2017, ("Gonzalez Decl.") (Dkt. 47)), and a declaration submitted by Plaintiff's counsel, Michael Faillace, Esq. ("Faillace") (*see* Declaration of Michael Faillace in Support of Proposed Findings of Fact, dated May 25, 2017, ("Faillace Decl.") (Dkt. 48)).

Plaintiff alleges that, from approximately June 2007 to February 4, 2015, he was employed as an automobile repair assistant at an establishment located at 1135 Webster Avenue in the Bronx that was owned, operated, and/or controlled by Defendants. (*See* Proposed Findings ¶¶ 5-6.) Plaintiff claims that, throughout his employment at Tito Transmission, he was not compensated at one-and-a-half times his regular rate of pay for the hours he worked in excess of 40 hours per week. (*See id* ¶¶ 7, 12; *see also* Gonzales Decl. ¶¶ 17-18.) Plaintiff specifically alleges that, from approximately February 2009 through February 4, 2015 (*i e* , for the six-year

2

period prior to the filing of his Complaint), he generally worked an 11-hour shift, six days per week, for a total of 66 hours per week, receiving only one 45-minute lunch break each day. (Proposed Findings ¶¶ 8, 9; Gonzalez Decl. ¶¶ 9, 13, 14.) Each week, Plaintiff was allegedly paid $500, and the "pay did not vary when he had to work additional hours longer than his usual schedule." (Proposed Findings ¶¶ 11-12; Gonzalez Decl. ¶¶ 16-17.)

Plaintiff also alleges that, for the duration of his employment, Defendants paid him his wages in cash and never provided him with a statement of his wages or any notice, either in English or in Spanish (Plaintiff's primary language), regarding his pay rate or his regular pay day, or providing any other information about his pay. (Proposed Findings ¶ 14; Gonz. Decl. ¶ 20.) According to Plaintiff, Defendants also failed to provide him with written information regarding minimum wage and overtime requirements. (Proposed Findings ¶ 15; Gonz. Decl. 21.) Moreover, Plaintiff alleges that Defendants did not require him to track his time, nor did Defendants track his time, by using any time-tracking device such as a punch card. (Proposed Findings ¶ 13; Gonz. Decl. ¶ 19.)

**B.    Procedural History**

As noted above, Plaintiff commenced this action by filing a Complaint on February 18, 2015. (*See* Compl.) After Defendants failed to respond to the Complaint, the Clerk of Court issued Certificates of Default as to both Amparo and Tito Transmission. (Dkts. 8-9.) Plaintiff thereafter filed a motion for a default judgment against Defendants on May 13, 2016. (Dkt. 12.) Amparo's counsel entered an appearance on Amparo's behalf on May 23, 2016, and submitted a letter to Judge McMahon claiming that Plaintiff and Amparo had earlier entered into a settlement that released Amparo from liability. (Dkt. 20; *see* Dkt. 26 (purported release).) Plaintiff

3

subsequently withdrew his motion for a default judgment, and the Court scheduled an initial pre-trial conference. (*See* Dkt. 30.)

This case was referred to this Court for general pre-trial supervision on September 16, 2018. (Dkt. 32.) On February 8, 2017, after Amparo and his counsel failed to appear for two conferences ordered by this Court and also failed to comply with Court-ordered discovery, this Court sanctioned Amparo and his counsel. (Dkt. 38.) Following Amparo's and his counsel's continued failure to comply with Court Orders, Judge McMahon, upon this Court's recommendation, entered a default judgment against both Defendants on April 5, 2017. (Dkt. 41). In connection with that judgment, Judge McMahon referred the matter to this Court for an inquest on damages and attorneys' fees. (Dkt. 42.) On May 25, 2017, Plaintiff submitted Proposed Findings, to which Defendants have not responded.

## DISCUSSION

## I. APPLICABLE LEGAL STANDARDS

### A. Default Judgment

"[D]efault is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted). Although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages. *Bambu Sales, Inc. v Ozak Trading, Inc*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). In conducting a damages inquest, the Court accepts as true all of the factual allegations of the complaint, except those relating to damages. *Au Bon Pain Corp v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).

4

A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))). The burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv1369 (LGS) (AJP), 2013 WL 1668206, at \*6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013) (citations omitted), although the plaintiff is entitled to all reasonable inferences in its favor based on the evidence submitted, *see U S ex rel. Nat'l Dev. & Constr. Corp v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at \*3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation). Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), and the Court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs alone, *see, e.g., Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at \*4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing).

Regardless of the submitted proofs or testimony, though, damages awarded upon a defendant's default "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Second Circuit has interpreted the Rule 54(c)

5

requirement to turn on the defendant's receipt of adequate notice of the scope of damages on the face of the plaintiff's complaint. *Silge v. Merz*, 510 F.3d 157, 161 (2d Cir. 2007) ("The timing and method of such notice (*i.e.*, that it come before the decision to default and be evident from the face of the complaint) are both critical to the analysis"). While Rule 54(c) precludes an award of damages that exceeds the amount demanded in the plaintiff's complaint, *Robinson v Holder*, No. 07cv5992 (DLC), 2008 WL 2875291, at *7 (S.D.N.Y. July 22, 2008) (rejecting the plaintiff's proposed measure of damages for a legal malpractice claim where it exceeded the amount demanded in the amended complaint), "this does not mean that Rule 54(c) precludes damages where a complaint fails to articulate a sum certain in its ad damnum clause," *Pauta v. Aena Mech Corp* , No. 11cv6374 (WHP), 2014 WL 3855025, at *1 (S.D.N.Y. July 25, 2014); *see also Capgemini U S., LLC v. EC Manage, Inc.*, No. 10cv2486 (GBD) (HPD), 2012 WL 5931837, at *6 (S.D.N.Y. Nov. 7, 2012) (where ad damnum clause requested $1,000,000 "plus interest," "the [c]omplaint put the defendants on notice that they could be liable for an amount in excess of $1,000,000 once interest was computed," and therefore interest award would not violate Rule 54(c)), *report and recommendation adopted*, 2012 WL 5938590 (Nov. 27, 2012)). Indeed, "[c]ourts may award damages in the absence of an ad damnum clause articulating a sum certain, so long as those damages do not depart from the type of relief sought in the complaint." *Pauta*, 2014 WL 3855025, at *2 (although the plaintiff did not demand a sum certain in his complaint, he was entitled to the specific amounts sought in his motion for default judgment given that, in his complaint, "he clearly identified the types of damages he was seeking").

While the Court may hold a hearing to assess the amount of damages that should be awarded on default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves

6

the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. ContiCommodity Servs., Inc*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v Adam Caterers, Inc*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given "much discretion" to determine whether an inquest hearing need be held); *Action S A. v Marc Rich & Co*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing" (citations omitted)).

## B. Burden of Proof in Wage Cases, Where Defendants' Records Are Inadequate or Have Not Been Produced

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'" *Santillan*, 822 F. Supp. 2d at 293-94 (quoting *Anderson v. Mt Clemens Pottery Co*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq*). As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves,'" *id.* at 294 (quoting *Anderson*, 328 U.S. at 687) (alteration in original), and, "'even if they do, the records may be and frequently are untrustworthy,'" *id.* (quoting *Anderson*, 328 U.S. at 687). Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer." *Id* (quoting *Anderson*, 328 U.S. at 687) (alteration in original).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." *Id.* As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated." *Id.* at 293-94 (finding, in a default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing

7

information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)). "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id* (internal quotation marks and citations omitted); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (where an employer fails to produce evidence regarding the amount of work that the employee performed or evidence to negate "the reasonableness of the inference to be drawn from the employee's evidence," the court may "award damages to the employee, even though the result be only approximate." (quoting *Anderson*, 328 U.S. at 687-88)).

Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp. 2d at 294 (quoting N.Y. Lab. Law § 196-a).

## C.   **FLSA and NYLL Statutes of Limitations**

Under the FLSA, the applicable statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years. 29 U.S.C. § 255(a). Willfulness under the FLSA is found where an employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute." *McLaughlin v  Richland Shoe Co* , 486 U.S. 128, 133 (1988). "[A] defendant's default, in itself, may suffice to support a finding of willfulness." *Santillan*, 822 F. Supp. 2d at 297. The applicable limitations period for NYLL claims is six years. N.Y. Lab. Law § 663(3).

8

.

## D. Damages Available Under the FLSA and NYLL for Minimum Wage and Overtime Pay Violations

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week. 29 U.S.C. § 206(a). Moreover, an employee is entitled to be paid for overtime hours (*i e.,* hours exceeding 40 per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." *Id.* § 207(a)(1); *see also, e g., Chun Jie Yin v. Kim,* No. 07cv1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (adopting report and recommendation and noting that "[t]he FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the statutory minimum wage) for hours worked above 40 hours per week" (citations omitted)). A plaintiff with a successful minimum-wage claim under the FLSA is entitled to recover damages up to, but not exceeding, these statutory amounts. *See Santillan,* 822 F. Supp. 2d at 293. On July 24, 2009, the federal minimum wage was increased from $6.55 to $7.25 per hour, *see* 29 U.S.C. § 206(a)(1)(C), and the corresponding overtime pay requirement (*i.e.,* 150 percent of that rate) was therefore increased from $9.825 to $10.875 per hour.

Under the NYLL, a prevailing plaintiff is entitled to recover "the full amount of wages owed, not just the statutory minimum wage for the hours worked." *Chun Jie Yin,* 2008 WL 906736, at *4; *see also* N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such action."). Where, however, a plaintiff-employee was not owed more than the minimum wage, then the statutory rates come into play. For the periods relevant to this action, the statutory minimum wage in New York State was the following: as of the relevant time period prior to July 24, 2009, $7.15 per hour; as of July 24, 2009, $7.25 per hour; as of December 31, 2013, $8.00 per hour; as of December 31, 2014, $8.75 per hour. N.Y. Lab. Law § 652(2); 29 U.S.C. § 206(a)(1)(C). The

9

NYLL, like the FLSA, mandates payment at one and one-half times the regular normal rate for each hour worked by an employee in excess of 40 hours per week. 12 N.Y.C.R.R. § 146-1.4.

Where an employee earns a fixed salary, courts apply the same approach to determining the employee's regular rate under the FLSA and the NYLL for purposes of calculating the employee's legal overtime rate. The FLSA specifically states that, "[i]f the employee is employed solely on a weekly basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). Courts have recognized that, under the FLSA, there is a "rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement." *Pinovi v FDD Enterprises, Inc* , No. 13cv2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); *see also Giles v. City of New York*, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999) ("The fact that an employee regularly works 60 or more hours does not, without more, indicate that the employee's weekly salary was intended to include the FLSA overtime premium for all hours in excess of 40."). Courts in this District have extended this rebuttable presumption to apply under the NYLL, as well as the FLSA. *See, e.g ,* *Pastor v. Alice Cleaners, Inc.*, No. 16cv7264 (JLC), 2017 WL 5625556, at *2 (S.D.N.Y. Nov. 21, 2017); *Pinovi*, 2015 WL 4126872, at *4; *Amaya v Superior Tile and Granite Corp.*, No. 10cv4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012). "[T]he employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours." *Giles*, 41 F. Supp. 2d at 317. Absent evidence that the employer and employee understood that the fixed weekly salary included overtime hours, a court will find that the weekly salary covered only the first 40 hours. *See Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9; *cf. Doo Nam Yang v. ACBL*

10

*Corp.*, 427 F. Supp. 2d 327, 335, 338 (S.D.N.Y. 2005) (finding that the FLSA's rebuttable presumption had been overcome where the plaintiff conceded that his salary covered 50 hours of work).

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the [NYLL], [he or she] may not recover twice." *Cao v Wu Liang Ye Lexington Rest., Inc*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010). Instead, "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *report and recommendation adopted*, 2011 WL 2038973 (May 24, 2011) (internal quotation marks and citation omitted). Accordingly, when calculating minimum-wage damages, the higher of either the FLSA or the New York minimum wage should be used for any period covered by both statutes. *Id.*

E.     **Spread-of-Hours Pay Pursuant to the NYLL**

Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular wages and overtime, an employee is entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than 10 hours. 12 NYCRR § 142-2.4(a); *see also* N.Y. Lab. Law §§ 650 *et seq.* "Spread of hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours." *Angamarca v. Pita Grill 7 Inc.*, No. 11cv7777 (JGK) (JLC), 2012 WL 3578781, at *8 (S.D.N.Y. Aug. 2, 2012), *report and recommendation adopted*, Dec. 14, 2012 (slip op.).

11

## F.   New York State Wage Notice Requirements

### 1.   Wage Statements

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the

NYLL that was made effective as of April 9, 2011, employers are required to

> 'furnish each employee with a statement with every payment of
> wages, listing the following' information: (1) the dates of work
> covered by that payment of wages; (2) the employee's name;
> (3) the employer's name, address, and telephone number;
> (4) the rate or rates of pay and basis thereof; (5) gross wages;
> (6) deductions; (7) allowances, if any, claimed as part of the
> minimum wage; and (8) net wages.

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (quoting N.Y. Lab.

Law § 195(3)); *see also Baltierra v. Advantage Pest Control Co.*, No. 14cv5917 (AJP), 2015 WL

5474093, at *10-11 (S.D.N.Y. Sept. 18, 2015).

During the period relevant to this action, "the WTPA entitled employees to recover

statutory damages for violations of the wage statement requirement of $100 per work week, not

to exceed $2,500." *Baltierra*, 2015 WL 5474093, at *10 (citation omitted); *accord Inclan v. N.Y*

*Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 501 (S.D.N.Y. 2015); *see also* 2010 N.Y. Laws ch.

564 § 7, *amending* N.Y. Lab. Law § 198(1-d).[1]

### 2.   Wage Notices

In addition, beginning April 9, 2011, the WTPA required employers to provide written

wage notices "on or before February first of each subsequent year of the employee's employment

with the employer." N.Y. Lab. Law § 195(1)(a) (eff. April 9, 2011 to Feb. 27, 2015).  The wage

---

[1] The $2,500 cap was raised to $5,000 by amendments effective February 27, 2015, *see*
2014 N.Y. Laws ch. 537 § 2, after the period of Plaintiff's employment.

notice was required to be "in English and in the language identified by each employee as the primary language of such employee," *id.*, and was required to contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any 'doing business as' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Salinas*, 123 F. Supp. 3d at 474 (footnote omitted).

Prior to February 27, 2015, "the WTPA entitled employees to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500." *Baltierra*, 2015 WL 5474093, at *11; *accord Inclan*, 95 F. Supp. 3d at 501-02; *see also* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-b).[2]

## G.   Liquidated Damages Pursuant to the FLSA and NYLL

In addition to allowing recovery for unpaid minimum wages and overtime compensation, the FLSA provides for the recovery of liquidated damages. *See* 29 U.S.C. § 216(b). Under the statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA. *See id* (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal

---

[2] The $2,500 cap on these types of statutory damages was also raised by amendment to the statute, but this amendment similarly became effective February 27, 2015, *see* 2014 N.Y. Laws ch. 537 § 2, after Plaintiff's employment with Defendants had ended.

amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay liquidated damages unless the employer demonstrates that he was acting in "good faith" and "had reasonable grounds for believing" that he was not acting in violation of the FLSA); *Galeana v Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (adopting report and recommendation).

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception.'" *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*, 121 F.3d at 71 (other internal quotation marks and citations omitted)); *Cao*, 2010 WL 4159391, at \*5; *Yu G. Ke*, 595 F. Supp. 2d at 261; *see also* 29 U.S.C. § 260.

The NYLL also provides for the recovery of liquidated damages, *see* N.Y. Lab. Law § 663(1), and while, prior to April 9, 2011, liquidated damages were awarded at the rate of 25 percent of the unpaid wages, an amendment to the NYLL, effective as of that date, increased the award to a rate of 100 percent of unpaid wages. *Wimbush v. L.I C. Pet Transp. Inc*, No. 16cv5363 (PAE) (KNF), 2018 WL 3388296, at \*4 (S.D.N.Y. July 12, 2018). Although courts within this Circuit were previously split on the question of whether a plaintiff could recover liquidated damages under both the FLSA and the NYLL, *see Chowdhury v Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016), the Second Circuit has since clarified that double recovery is not permitted, *id*; *Rana v Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (interpreting the NYLL and FLSA as "not allowing duplicative liquidated damages for the same course of conduct," and holding that "plaintiff should receive the larger of the two liquidated damages awards").

14

## H.    Prejudgment Interest

Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved." *Najnin v  Dollar Mountain, Inc.*, No. 14cv5758, 2015 WL 6125436, at \*3 (S.D.N.Y. Sept. 25, 2015) (citation omitted). Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation." *Id.* Thus, a plaintiff who recovers liquidated damages under the FLSA is not also entitled to prejudgment interest on his or her FLSA damages. *See, e g., Fermin v  Las Delicias Peruanas Rest., Inc* , 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v  Ariba Disc , Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at \*3 (S.D.N.Y. Jan. 16, 2015))). As a result, in an action where both FLSA and NYLL claims are brought, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA." *Andrade v. 168 First Ave Restaurant Ltd.,* 14cv8268 (JPO) (AJP), 2016 WL 3141567, at \*9 n.7 (S.D.N.Y. June 3, 2016).

Based on a provision added to the NYLL in 2011, however, a plaintiff who recovers liquidated damages under the NYLL is also entitled to prejudgment interest. *See Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at \*35 (S.D.N.Y. June 9, 2016) (noting that, under the NYLL, a plaintiff may receive both an "award of prejudgment interest alongside a liquidated damages award" (citing N.Y. Lab. Law § 198(1-a))); *see also Castillo v. RV Transp , Inc* , No. 15cv0527 (LGS), 2016 WL 1417848, at \*3 (S.D.N.Y. Apr. 11, 2016). Under the state

15

law, though, "[p]rejudgment interest is calculated . . . on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc*, No. 10cv4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y. C.P.L.R. §§ 5001, 5004. As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest." *Alvarez v 215 N Ave Corp*, No. 13cv0049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation):

> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*

*Alvarez*, 2015 WL 3855285, at *3. It is within the Court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'" *Id.* (quoting *Conway v Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

## I. Joint and Several Liability of "Employers" Under the FLSA and NYLL

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to include] 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Doo Nam Yang*, 427 F. Supp. 2d at 342-43 (quoting 29 U.S.C. § 203(d)). "The definition of 'employer' is similarly expansive under New York law, encompassing any 'person employing any [employee].'" *Id.* (quoting N.Y. Lab. Law §§ 2(6)). To determine whether a party qualifies as an "employer" under both statutes' "generous definitions," the relevant inquiry

is "whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case." *Id.* (quoting *Herman v RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate various factors, none of which, individually, is dispositive. *Id.* These factors include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Herman,* 172 F.3d at 139). Further, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages." *Id.* (quoting *Moon v Kwon,* 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002), and finding defendants jointly and severally liable under both the FLSA and the NYLL).

### J.    Attorneys' Fees and Costs

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Najnin,* 2015 WL 6125436, at *4; *see* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co ,* 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "presumptively reasonable fee" (internal quotation marks omitted; citing *Arbor Hill,* 522 F.3d at 183, and *Perdue v Kenny A. ex rel Winn,* 559 U.S.

17

542 (2010)). The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to assess the fee application, *New York State Ass'n for Retarded Children, Inc v Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v N.Y. State Teamsters Conf. Pension & Ret Fund*, 831 F.2d 407, 409 (2d Cir. 1987). In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate. *See Savino v Computer Credit, Inc*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly. *See Seitzman v Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours). In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with

18

the litigation, *see Kirsch v Fleet St , Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as "the straightforward nature of the work performed [and] the relative simplicity of the issues involved," *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at \*6 (S.D.N.Y. June 10, 2014) (citations and internal quotation marks omitted).

In addition to the lodestar amount, attorneys' fees may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). These expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and reasonable process server fees, *Rosendo v Everbrighten Inc* , No. 13cv7256 (JGK) (FM), 2015 WL 1600057, at \*9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (July 28, 2015).

## II.    PLAINTIFF'S DAMAGES CLAIMS

As a threshold matter, in the consideration of damages, this Court finds Plaintiff's submissions to be sufficient to meet his burden of proof to establish, to a reasonable certainty, his applicable overtime, spread-of-hours, and statutory damages, such that a hearing on such damages is not required. *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is necessary). As noted above, in the context of a default, where the defendant has neither provided any employment records, nor otherwise rebutted the plaintiff's damages claims, it is sufficient for a plaintiff to rely on his "recollection alone" to establish the hours he worked and the rates he should have been paid. *Santillan*, 822 F. Supp. 2d at 294 (internal quotation marks and citations omitted). In this case, this Court

19

accepts as true, for purposes of this inquest, the well-pleaded factual allegations presented in the Complaint and Plaintiff's signed Declaration, which, as summarized in the Proposed Findings, set out Plaintiff's recollections regarding the hours he worked and the rates of pay he earned for that work. (Compl. ¶¶ 43, 45.) The Court finds that the Complaint, the Gonzalez Declaration, and the Proposed Findings have adequate information to make a reasonable assessment of damages.

In addition, this Court has carefully reviewed, and – based on that review – largely relies upon the chart annexed to the Faillace Declaration reflecting Plaintiff's proposed damages calculation. (*See* Exhibit 2 to Faillace Decl. (the "Damages Chart")) (Dkt. 48-2).) The Damages Chart details the amount Plaintiff was actually paid per week ("Credited" Weekly Pay), the amount he should have been paid according the applicable statutory overtime wage rate given his base rate of pay (Lawful Weekly Pay), and the difference between the two (Underpayment Per Week). (*Id* ) The total amount of unpaid overtime is then calculated by multiplying the number of weeks in the pay period at issue by the amount that Plaintiff was underpaid per week. (*Id* ) The Damages Chart also details additional amounts Plaintiff is seeking, including liquidated damages, unpaid spread-of-hours pay and liquidated damages on that amount, and damages for wage notice and wage statement violations. (*Id* ).

A.    **Plaintiff's Claim for Unpaid Overtime Hours**

As set out above, Plaintiff alleges that, for the entire period of his employment as an automobile repair assistant, he was paid a fixed salary of $500 per week. (*See* Gonzalez Decl. ¶¶ 9, 16.) This Court takes that fact as true, as well as the alleged fact that Plaintiff worked approximately 66 hours per week, with a 45-minute lunch break every day (*id* at ¶¶ 13-14), meaning that he actually worked 61.5 hours per week. Thus, this Court concludes that, after the

20

first 40 hours, Plaintiff worked 21.5 hours of overtime per week. Given the absence of any evidence of an agreement between the parties that Plaintiff's weekly salary would cover the full 61.5 hours worked each week, this Court presumes that Plaintiff's $500 weekly salary covered only the first 40 hours of his work, *see Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9, which yields a base hourly rate of $12.50. Using that base hourly rate, which, for all relevant periods, was more than the applicable federal and state minimum wage, Plaintiff was entitled to overtime pay (*i e*, one and one-half times the base rate pursuant to the FLSA and the NYLL, 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2) at an hourly rate of $18.75 for the 21.5 overtime hours Plaintiff worked each week. Plaintiff was therefore entitled to overtime pay of $403.13 per week.

Accepting Plaintiff's reasonable estimate of 310 weeks for the period of February 18, 2009 through February 4, 2015,[3] this resulted in an underpayment of $124,968.75 in overtime wages. This calculation is in accord with Plaintiff's proposed damages calculation as reflected in his Proposed Findings and in the Damages Chart. (*See* Proposed Findings ¶ 45; Damages Chart.)

**B.    Plaintiff's Claim for Spread-of-Hours Compensation**

As discussed above, Plaintiff asserted that, exclusive of his lunch break, he worked approximately 10.25 hours per day, six days per week. Therefore, under the NYLL, Plaintiff is entitled to one additional hour's pay at the statutory minimum wage rate for each day that he worked. *See* 12 N.Y.C.R.R. § 142-2.4. Given the minimum wage increases throughout

---

[3] Although Plaintiff began working in 2007, the earliest date from which Plaintiff can recover, in accordance with the NYLL's six year statute of limitations, is February 18, 2009 (*i.e*, six years prior to the date he filed his Complaint). N.Y. Lab. Law § 663(3). Therefore, given that Plaintiff was employed until February 4, 2015, the period for which Plaintiff's is eligible for recovery is limited to the period from February 18, 2009 to February 4, 2015.

Plaintiff's employment (*see* Discussion, *supra*, at Section I(D)), his unpaid spread-of-hours compensation must be calculated separately for each period with a differing effective minimum wage.

For the period from February 18, 2009 to July 23, 2009, New York's minimum wage rate was $7.15 per hour. Thus, using Plaintiff's reasonable estimate of 22 weeks worked during that period, Plaintiff was underpaid $943.80 ($7.15/day x 6 days/week x 22 weeks). For the period from July 24, 2009 to December 30, 2013, New York's minimum wage rate was $7.25 per hour. Thus, using Plaintiff's reasonable estimate of 231 weeks worked during that period, Plaintiff was underpaid $10,048.50 ($7.25/day x 6 days/week x 231 weeks). For the period from December 31, 2013 to December 30, 2014, New York's minimum wage rate was $8.00 per hour. Thus, using Plaintiff's reasonable estimate of 52 weeks worked during that period, Plaintiff was underpaid $2,496 ($8.00/day x 6 days/week x 52 weeks). Finally, for the period from December 31, 2014 to February 4, 2018, New York's minimum wage rate was $8.75 per hour. Thus, using Plaintiff's reasonable estimate of five weeks worked during that period, Plaintiff was underpaid $262.50 ($8.75/day x 6 days/week x 5 weeks).

In total, Plaintiff's spread of hour damages equals $13,750.80, which aligns with Plaintiff's proposed damages calculation. (*See* Proposed Findings ¶ 45; Damages Chart.)

### C.    Plaintiff's Claim for Liquidated Damages

As discussed above, both the FLSA and the NYLL also provide for the recovery of liquidated damages. Indeed, both statutes mandate that the Court award liquidated damages to a prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law. (*See* Discussion, *supra*, at Section I(F).) Here, given Defendants' default, they have not met their burden of

22

proving that they acted in good faith, *see Galeana*, 120 F. Supp. 3d at 317, and thus liquidated damages are available under the provisions of both statutes, 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). Plaintiff specifically seeks liquidated damages under the NYLL (*see* Proposed Findings ¶¶ 31-32), which would result in a higher liquidated damages award than if the FLSA were applied, *see Morales v Mw Bronx, Inc*, No. 15cv6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016) (citations omitted). As Plaintiff is entitled to recover under whichever statute would yield the greatest recovery, *see, e g., Wicaksono*, 2011 WL 2022644, at *3, this Court recommends that liquidated damages be awarded, as requested, under the NYLL.

Plaintiff is entitled to liquidated damages for unpaid overtime wages due to him both prior to and after the April 9, 2011 amendments to the NYLL, which increased liquidated damages from 25 percent of unpaid wages to 100 percent of unpaid wages. *See* N.Y. Lab. Law § 663(1). With respect to the pre-April 9, 2011 period (from February 18, 2009 to April 8, 2011), Plaintiff is due $44,746.88 in unpaid overtime wages and is further due $4,815.30 in unpaid spread-of-hours pay. Thus, Plaintiff's liquidated damages for unpaid wages for the pre-April 9, 2011 period calculate to $12,390.55 (($44,746.88 + $4,815.3) x .25). With respect to the period from April 9, 2011 forward (from April 9, 2011 to February 4, 2015), Plaintiff is due $80,221.87 in unpaid overtime wages and $8,935.50 in unpaid spread-of-hours pay. Thus, Plaintiff's liquidated damages for unpaid wages for this period calculate to $89,156.37 (($80,221.87 + $8,935.50) x 1.0). In total, Plaintiff is entitled to $101,547.92 in liquidated damages for unpaid wages under the NYLL, which again aligns with Plaintiff's proposed damages calculation. (*See* Proposed Findings ¶ 45; Damages Chart.)

## D. Plaintiff's Claim for Statutory Damages

Plaintiff contends that, throughout the duration of his employment, Defendants failed to provide him with wage statements and annual wage notices in violation of the WTPA, and that he is therefore entitled to additional statutory damages pursuant to the NYLL. (Compl. ¶¶ 65-66, 83-84, 86-87.) Plaintiff specifically seeks $2,500 for Defendants' failure to provide wage statements, and $2,500 for Defendants' failure to provide an annual wage notice. (*Id* )

As laid out above, the WTPA imposes statutory damages of $100 per work week, capped at $2,500, for the failure to provide employees with compliant wage statements, where such damages were incurred between April 9, 2011 and February 27, 2015. (*See* Discussion, *supra*, at Section I(F)(1) and n.1; *see also* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-d).) Thus, accepting Plaintiff's claim that he was employed by Defendants for more than 25 weeks between April 9, 2011 and February 4, 2015, and that he never received a wage statement from Defendants (*see* Compl. ¶ 65), he is entitled to the maximum amount of $2,500 in statutory damages for these wage-statement violations.

The WTPA also imposes statutory damages of $50 per work week, capped at $2,500, for the failure to provide employees with compliant annual wage notices, where such violations occurred between April 9, 2011 and February 27, 2015. (*See* Discussion, *supra*, at Section I(F)(2) and n.2; *see also* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-b).) Accepting Plaintiff's claim that he did not receive a wage notice for the entire duration of his employment, which included more than 50 weeks following April 9, 2011, he is also entitled to the maximum of $2,500 in statutory damages for wage notice violations. *See Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12cv9353 (PAC), 2015 WL 1881080, at *4

(S.D.N.Y. Apr. 24, 2015); *Cuzco v F & J Steaks 37th St. LLC*, No. 13cv1859 (PAC), 2014 WL 2210615, at \*4 (S.D.N.Y. May 28, 2014).

This Court therefore recommends that Plaintiff be awarded the requested $5,000 in statutory damages for Defendants' failure to provide him with both wage statements and wage notices for the time periods when such damages were available. (*See* Proposed Findings ¶ 45; Damages Chart).

## E. Plaintiff's Claim for Prejudgment Interest

Plaintiff also seeks prejudgment interest on his unpaid overtime wages and his unpaid spread-of-hours pay. (Proposed Findings ¶¶ 37-38.) As noted above, the NYLL provides that a plaintiff may recover both liquidated damages and prejudgment interest on the underlying damages. *See Hernandez*, 2016 WL 3248493, at \*35; *Castillo*, 2016 WL 1417848, at \*3. While "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA," *Andrade*, 2016 WL 3141567, at \*9 n.7, where, as here, a plaintiff is entitled to liquidated damages only pursuant to the NYLL, the plaintiff is "eligible for an award of prejudgment interest on the full . . . damages arising out of his . . . wage claims," *Xochimitl v Pita Grill of Hell's Kitchen, Inc.*, No. 14cv10234 (JGK) (JLC), 2016 WL 4704917, at \*18 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258 (Nov. 21, 2016). As set out above, prejudgment interest on damages under the NYLL is awarded at a rate of nine percent per annum, *Najnin*, 2015 WL 6125436, at \*4; N.Y.C.P.L.R. § 5004, and such interest may be calculated from either the "earliest ascertainable date the cause of action existed" or "from a single reasonable intermediate date," where damages were incurred at various times, N.Y.C.P.L.R. § 5001(b).

25

With respect to Plaintiff's unpaid overtime wages, which amounts to $124,968.75, this Court calculates Plaintiff's prejudgment interest from the midpoint date of the period of employment for which he seeks to recover damages, February 11, 2012, to the date of Plaintiff's inquest submissions, May 25, 2017. Applying the prejudgment rate of nine percent per annum to this principal amount yields prejudgment interest in the amount of $59,440.62 ($124,968.75 x .09 x (1,930/365)). With respect to Plaintiff's unpaid spread-of hours pay, given that damages accrued variably due to the increases in the applicable minimum wage, this Court calculates prejudgment interest separately for each time period as to which a particular minimum-wage requirement applied. *Cf. Said v. SBS Elecs , Inc.*, No. 08cv3067 (RJD) (JO), 2010 WL 1265186, at \*9 (E.D.N.Y. Feb. 24, 2010) (calculating interest on entire employment period, as "the amounts owed accrued at an essentially regular rate"), *report and recommendation adopted as modified on other grounds*, 2010 WL 1287080 (Mar. 31, 2010). This calculation yields the following amount of prejudgment interest:

| From | To | Principal (Spread-of-Hours Damages) | Interest Calculation (Principal x .09 x Years from Midpoint Date to 5/25/2017) | Interest Owed |
|---|---|---|---|---|
| 2/18/09 | 7/23/09 | $943.80 | $943.80 x .09 x (2,941/365) | $684.42 |
| 7/24/09 | 12/30/13 | $10,048.50 | $10,048.50 x .09 x (2,052/365) | $5,084.27 |
| 12/31/13 | 12/30/14 | $2,496.00 | $2,496 x .09 x (1,059/365) | $651.76 |
| 12/31/14 | 2/4/15 | $262.50 | $262.50 x .09 x (859/365) | $55.60 |
| | | | **Total:** | **$6,476.05** |

This Court notes that its calculation of a total of $65,916.67 in prejudgment interest up to the date of Plaintiff's submissions – consisting of $59,440.62 for unpaid overtime wages plus $6,476.05 for unpaid spread-of-hours pay – is significantly higher than Plaintiff's requested interest award of $44,779.42. (*See* Proposed Findings ¶ 40, 45; Damages Chart.) While Plaintiff has not provided any explanation of the methodology used in his interest calculation, it appears from his Damages Chart that the difference between his calculation and that of this Court may be

26

primarily attributable to an error by Plaintiff in excluding prejudgment interest on all unpaid overtime wages due for the three-year period preceding the filing of the Complaint. (*See* Damages Chart.)[4]

Regardless of the reason for the discrepancy, the Court is not bound to award Plaintiff the lower amount sought in the Proposed Findings. As discussed above, Rule 54(c) of the Federal Rules of Civil Procedure provides that a default judgment award may not exceed the amount "demanded in the *pleadings*," Fed. R. Civ. P. 54(c) (emphasis added), and thus only requires that a plaintiff provide notice, in his *complaint*, of the damages he seeks, so as to ensure that a defendant who is considering default can look at the ad damnum clause and satisfy himself that he is willing to suffer a default judgment, *see Pauta*, 2014 WL 3855025, at \*1, *Silge*, 510 F.3d at 161. Plaintiff included a distinct claim for prejudgment interest in the ad damnum clause of his Complaint, thereby placing Defendants on notice, through his pleadings, that he intended to seek prejudgment interest. *See Capgemini U.S. LLC*, 2012 WL 5931837, at \*6. While his calculation of prejudgment interest in his inquest submissions produced an amount less than this Court's calculation, his proposed amount was submitted after Defendants made the decision to default, and after a default judgment had been entered against them. The Court therefore is not required by Rule 54(c) to limit its award to the amount of prejudgment interest sought in the Proposed Findings, and may instead grant an award consistent with its own calculation.

---

[4] This exclusion would make sense if Plaintiff were seeking an award of unpaid overtime under the FLSA, rather than the NYLL, as, for the reasons stated above, prejudgment interest is not available for damages awarded under the FLSA. (*See* Discussion, supra, at Section I(H).) As Plaintiff's chart otherwise makes clear, however, Plaintiff is seeking (and is entitled to) damages for unpaid overtime solely under the *NYLL*, which, during the three-year period also covered by the FLSA, provided higher minimum wage rates, and thus higher rates for overtime wages.

27

Accordingly, this Court recommends that Plaintiff be awarded $65,916.67 in prejudgment interest up to the date of Plaintiff's inquest submissions (May 25, 2017), with additional interest to be calculated by the Clerk of Court, at the rate of nine percent per annum from May 25, 2017 to the date that final judgment is entered. This Court therefore recommends that Plaintiff be awarded, in total, $245,267.47 in damages, plus $65,916.67 in prejudgment interest, with additional prejudgment interest to be calculated by the Clerk of Court.

## F.     **Joint and Several Liability**

Plaintiff requests that Defendants Tito Transmission and Amparo be held jointly and severally liable for the damages owed to Plaintiff in this action. (*See* Compl. ¶¶ 25-35 ("*Defendants Constitute Joint Employers*" (italics in original)).) Under both the FLSA and NYLL, "employers" – *i.e.*, those who "possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case," *Doo Nam Yang*, 427 F. Supp. 2d at 342 (internal quotation marks and citation omitted) – may be held liable for statutory violations, *id.* In this case, Plaintiff's well-pleaded allegations are sufficient to support a finding that, while Plaintiff was an employee at the business in question, both Defendants had control over the "economic reality" of Plaintiff's employment.

Plaintiff has alleged that both Defendants had "the power to hire and fire" him (Compl. ¶ 33), "controlled the terms and conditions of his employment" (*id* ), and "determined the rate and method" of his compensation (*id* ). Plaintiff has also alleged that Amparo not only possessed an "ownership interest" in Tito Transmission (*id.* ¶ 26), but also had "operational control" over the corporation (*id.*), and "substantial control" over Plaintiff's working conditions (*id.* ¶ 28). Taking these allegations as true upon Defendants' default, this Court finds that both

28

Tito Transmission and Amparo should be found to have been employers of Plaintiff, such that it would be appropriate for the Court to hold them jointly and severally liable.

## III.   ATTORNEYS' FEES AND COSTS

Plaintiff seeks $9,875 in attorneys' fees for 26.80 hours of work performed by counsel in connection with this action, and litigation costs in the amount of $535. (Faillace Decl. Ex. 3.) For the reasons that follow, this Court recommends that attorneys' fees be awarded in the reduced amount of $7,280, and that litigation costs be awarded in the reduced amount of $400.

### A.   Reasonable Hourly Rates

Plaintiff was represented in this case by Faillace and by Jesse Barton, Esq. ("Barton"), with the assistance of Humberto Alvarez ("Alvarez"), all of the law firm Michael Faillace & Associates, P.C. (the "Faillace Firm"). (*See* Faillace Decl. ¶ 14.) Faillace is the managing partner of the Faillace Firm, and has been practicing employment law since 1983. (*See id.* ¶ 14.) He taught employment-discrimination law as an adjunct professor at Fordham University School of Law from 1992 to 2010, and at Seton Hall University Law School from 1995 to 1998, and he describes himself in his Declaration as a "nationally-renowned speaker and writer on employment law." (*Id.*) He bills at a rate of $450 per hour. (*Id.*) Barton has practiced employment law since 2012, and has only been with the Faillace Firm since 2015, the year this case was commenced. (*Id.*) He bills at a rate of $375 per hour. (*Id.*) Alvarez is a paralegal at the Faillace Firm who bills at an hourly rate of $100 per hour and who, according to the firm's time records, appears to have acted as a translator for Plaintiff in preparing for and attending court conferences. (*Id.* ¶ 14 & Ex. C.) [5]

---

[5] Although the firm has not explained this, this Court assumes that the initials "PL," which are associated with various billable entries in the time records submitted by the Faillace Firm (*see id* ¶ 14 & Ex. 3), stand for "paralegal" and thus refer to Alvarez.

This Court has previously recommended approval of an hourly rate of $450 for Faillace, given his many years of experience in employment litigation, *see Almanzar v. 1342 St. Nicholas Avenue Restaurant Corp.*, No. 14cv7850 (VEC) (DF), 2016 WL 8650464 at \*19 (S.D.N.Y., Nov. 7, 2016), *report and recommendation adopted*, 2017 WL 1194682 (Mar. 30, 2017), and finds it appropriate in this case as well. With respect to Barton, while at least one court in this District – in connection with a case that proceeded to trial – has awarded fees for Barton's time at his requested hourly rate of $375, *see Calle v NDG Coffee Shop, Inc.*, No. 16cv7702 (RJS), 2018 WL 1779347, at \*2 (S.D.N.Y. Apr. 12, 2018), several courts in both this District and in the Eastern District of New York have recently approved only a reduced hourly rate of $225 for Barton in uncomplicated cases, particularly in which the defendants defaulted, *see Soto v Los Corbaticas Deli Grocery II Corp.*, No. 18cv3602 (JGK) (JLC), 2018 WL 4844018, at \*8 (S.D.N.Y. Oct. 5, 2018); *Godinez v Best Wingers LLC*, No. 16cv6434 (JGK) (SDA), 2018 WL 1320340, at \*6 (S.D.N.Y. Feb. 21, 2018), *reported and recommendation adopted*, 2018 WL 1353215 (Mar. 14, 2018); *Martinez v Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at \*27 (E.D.N.Y. Sept. 22, 2017). Given that the facts of this case were not complicated and that Defendants defaulted, this Court recommends that the Court follow suit here, and reduce Barton's requested rate to $225 per hour. Finally, with respect to Alvarez, this Court finds his $100 requested hourly rate to be consistent with paralegal rates that have generally been approved in this District, *see Sevilla v. Nekasa Inc.*, No. 16cv2368 (AJP), 2017 WL 1185572, at \*6 (S.D.N.Y. Mar. 30, 2017) (collecting cases), and that his time providing translation assistance should be compensated at that rate, *see Ortega v. JR Primos 2 Rest. Corp* , No. 15cv9183 (JCF), 2017 WL 2634172, at \*7 (S.D.N.Y. June 16, 2017) (finding paralegal's

rate to be reasonable where the paralegal billed for time spent translating the plaintiff's testimony at an inquest hearing).

## B.    Reasonable Hours

In support of Plaintiff's request for attorneys' fees, the Faillace Firm has provided the Court with a copy of its time records, which appear to have been maintained contemporaneously during the course of the litigation, and which show the billable hours counsel expended during this action. (Faillace Decl., Ex. 3.) All but one of the time entries describe reasonable tasks that appear to have been performed within a reasonable amount of time. *(See id.)*[6] The single recorded entry for which, in this Court's view, counsel's time should be reduced is Faillace's entry for February 10, 2015, reflecting 2.50 hours spent on "Research." *(Id.)* Not only is this description of the work performed overly vague, *see, e.g., D J v City of New York*, No. 11cv5458 (JGK) (DF), 2012 WL 5431034, at *7-8 (S.D.N.Y. Oct. 16, 2012) (noting that attorney time entries that merely indicate that "research" was performed are generally considered too vague to justify full recovery), *report and recommendation adopted sub nom Roberts v City of New York*, 2012 WL 5429521 (Nov. 7, 2012), but a reduction in hours is warranted where a task, such as legal research, could have been performed by an associate at a lower rate, *see*

---

[6] This Court notes that several of counsel's times entries are "block-billed" – *i e.*, multiple tasks are clustered together in the same billing entry *(see, e g , id.* (Barton's time entry of 2 hours for Nov. 15, 2016 stating, "Prepare client for Court conference"; Attend Court conference"; Barton's time entry of 2.5 hours for Dec. 7, 2016 stating, "Conduct research; Draft motion for sanctions")), and that courts may reduce or even disallow requested attorneys' fees where the supporting time records were not broken out with sufficient detail to enable the courts to determine the reasonableness of the time spent on particular tasks, *see, e g , Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming hours reduction for pervasive block billing in time entries). In this particular case, however, this Court finds that the Faillace Firm's block-billing practice has not prevented this Court from assessing the reasonableness of the time Plaintiff's counsel spent on this matter, and therefore does not recommend any reduction based on the practice.

*generally Lane Crawford LLC v Kelex Trading (CA) Inc.*, No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *9 (S.D.N.Y. Dec. 3, 2013), *report and recommendation adopted*, 2014 WL 1338065 (Apr. 3, 2014); *see also Harrell v. City of New York*, No. 14cv7246 (VEC) (DF), 2017 WL 9538163, at *9 (S.D.N.Y. July 20, 2017) ("legal research is generally considered to be work that is capable of being performed by more junior attorneys and that should not be billed at partner-level rates"). For these reasons, this Court recommends reducing Faillace's compensable time on February 10, 2015 to 1.0 hour.

### C.    Lodestar Calculation

Using the reasonable rates and hours described above would result in the following lodestar calculation:

| Attorney | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Faillace | $450 | 9 | $4,050 |
| Barton | $225 | 12.8 | $2,880 |
| Alvarez | $100 | 3.5 | $350 |
| | | | Total: $7,280 |

This Court finds no exceptional circumstances here that would warrant deviation from the lodestar, *see Perdue*, 559 U.S. at 552, and therefore recommends that Plaintiff be awarded attorneys' fees in the amount of $7,280.

### D.    Costs

Plaintiff additionally seeks litigation costs, in the amount of $535, including a $400 filing fee, a $75 process-server fee, and a $60 process-server fee. (Faillace Decl., Ex. 3.) While this Court takes judicial notice of the filing fee and therefore finds it to be compensable, *see Guo v Tommy's Sushi, Inc.*, No. 14cv3964 (PAE), 2016 WL 452319, at *7 (S.D.N.Y. Feb 5, 2016), this Court does not recommend that the additional claimed costs be awarded. Apart from its own invoice itemizing these fees, the Faillace Firm has failed to submit any underlying

32

documentation supporting that the fees were incurred. It is Plaintiff's burden to demonstrate that the litigation costs sought were reasonably incurred and are properly recoverable from the defaulting Defendants, and in the absence of supporting documentation concerning the requested process-server and deposition fees, Plaintiff has not met his burden with respect to those litigation costs. *Pastor*, 2017 WL 5625556, at *9 (declining to award process-server fees where the plaintiff failed to submit underlying documentation from its counsel (the Faillace Firm), supporting that the fees were incurred). This Court therefore recommends that only $400 in costs be awarded.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that upon their default, Defendants Tito Transmission and Amparo be held jointly and severally liable for:

1.  Damages in the amount of $245,267.47, representing:

    a.  $124,968.75 in unpaid overtime;

    b.  $13,750.80 in unpaid spread-of-hours compensation;

    c.  $101,547.92 in liquidated damages under the NYLL; and

    d.  $5,000 in statutory damages under the NYLL;

2.  Prejudgment interest in the amount of:

    a.  $65,916.67 up to May 25, 2017 (the date that Plaintiff filed his Proposed Findings); and

    b.  additional prejudgment interest at the rate of nine percent per annum on the principal amount of $138,719.55, to be calculated by the Clerk of Court from May 25, 2017 to the date of entry of final judgment;

3.  Attorneys' fees in the amount of $7,280; and

4.  Costs in the amount of $400.

33

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, United States Courthouse, 500 Pearl Street, Room 2550, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge McMahon. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
December 6, 2018

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

The Honorable Colleen McMahon, U.S.D.J.

All counsel (via ECF)

34